Our only case for argument today is 23-1970, Precipient v. United States. Counsel, please proceed. May it please the Court, Your Honors, Hamish Hume for Appellant Precipient. Your Honors, the answer to the Court's question posed for en banc review is that a party is an interested party under the third prong of section 1491b1 where the alleged legal violation prevents that party from offering its goods or services to meet the procurement needs of the government agency. This definition logically follows from the plain text of section 1491. The key principle is that determining who is interested in challenging an alleged violation necessarily must be measured by what that violation is. So where the violation manifests itself in a solicitation or a contract award, this Court's precedent has been held that an interested party is an actual or prospective bidder on that solicitation or contract. But where the violation is... Why if we allow subcontractors to have standing under the last part of the sentence would it somehow still foreclose them that standing under the first part of the sentence if they can show they have an economic interest in being considered part of the solicitation? Your Honor, the subcontractor standing rules that have been articulated before fall into two categories. One is if the subcontractor's only interest is derivative of the prime contractor. In other words, they teamed up with the prime, that prime lost. Then they don't get to bring a case because they are only derivatively interested and this Court has wanted only the most directly interested party to directly harm it. Hypothetically, the government was putting together a solicitation for the contract and was considering various types of commercial off-the-shelf goods. And in the solicitation, there were different possible goods it could use and it decided to use two types of goods that primes could bid on but not two other types of goods. And a subcontractor only produced one of the two types of goods they couldn't bid on. Won't they have an interest in challenging the terms of that solicitation because the exclusion of those commercial items would have a direct economic impact on them because they couldn't be a potential subcontractor on the solicitation? I think if I followed your example, Judge Hughes, and I may not have, but if I did, the government agency, in your hypothetical, has made a determination on allowing, on crafting a solicitation in a manner that could be satisfied by certain kinds of commercial items but not others. Could the manufacturer of the commercial item that is excluded challenge? And the answer to that is yes, but they would challenge it as a normal challenge to a solicitation and they would have to have some argument. It sounds like an argument would have to be outside 3453 or based on an arbitrary and capricious application of 3453. So you think in that context, a subcontractor could challenge the terms of the solicitation? I think, yes, I think if the... So your argument is not to the last part of the 1491. It would also sweep in the first two parts. Our argument is focused on the third prong and is not focused on whether or not... I understand that, but we're deciding this case en bloc and it's going to potentially have a large effect depending on how we determine interest of the party and I'm trying to figure out how you would limit the definition that you're proposing which is you look at the underlying statute, not the term interest of party and determine whether somebody has an economic interest in the underlying statute and that that's enough to bring them within interest of party. Yes, I think, I understand Your Honor's concern about the implications of our argument. My answer was attempting to focus on whether the putative subcontractor has a challenge to the agency's action, that it is the most directly injured party. If it is the most directly... If its interest is only derivative by the fact that its prime wasn't picked, it has no standing. Sure. My hypothetical was designed to test that which is this isn't about the prime, this is about the agency setting the universe of commercial off-the-shelf items and let's just assume a bunch of possible subcontractors are coming in saying you should use this one or you should use this one and in the solicitation, the government agency goes with a couple of choices but not a couple of other choices. The prime doesn't care which one is going to be used. It's going to use whichever one that worked best with its bid and that the agency told them. But if you were one of the ones excluded from the solicitation, wouldn't you have a direct economic interest? Your Honor, we haven't had to confront that question but standing here right now, I think if they can show they're the most directly injured party and that their challenge is to action by the government, I think that within this court's precedence, they would be able to say they would be offering their product but for the legal violation. Your Honor, I'm not sure that that's clear. I don't think it was clear either way. I don't think that was ever a case that presented the question Your Honor presented. Mr. Zuma, I'd like to ask you. I'm not sure if I agree with your answer to that question. This is what I want to ask you. It sounds as if you are suggesting that perhaps somebody who would have standing under Prom 3 would be able to use that because Prom 3 is such broad language to override the limit of what an interested party is for Prom 1 or Prom 2. In other words, how could even though Prom 3 is more broadly written and says it would allow a broader understanding what an interested party is in the context of a Prom 3 only charge, how could it be that somebody could then, say they have a Prom 1 and a Prom 3 charge, how is it that they should be able to say, I'm an interested party with a direct economic interest because of a violation of a statute or regulation in connection with the solicitation and then override Prom 1? That can't possibly be the right answer, could it? No, I don't think so, Judge Stoll. And if my answer suggested that, then my answer was probably not quite correct. In general, our argument is that, and I want to be clear about what we mean by a Prom 3 only claim. So it's not a challenge to a solicitation, it's not a challenge to a contract. Precisely, Judge Stoll. It's by Prom 3 only, we don't mean to focus on how the litigant pled their case. For example, if AFGE had pled their case only under Prom 3, it wouldn't be what we mean to be a Prom 3 only claim. By Prom 3 only, we mean a claim that could only be brought under Prom 3 because it is not challenging a solicitation or a contract. Does that mean that the AFGE case would be overruled and the government employees in that case would now have standing to sue? Well, the holding of the case is that they would not have standing to sue. Did they now have standing to sue? Yes, if it affected the decision in your favor to overrule that case and to say that the employees under those circumstances would have standing to sue under the third Prom. We do not, like the panel, and like Judge Moss' analysis in Valedada, we do not think that is correct. No, because in AFGE, and this helps elucidate my answer to Judge Stoll's question, there was a challenge to a contract award. The legal violation, the cost analysis, manifested itself in a contract award, and therefore the holding that you need to be an actual prospective bidder on that contract stands and does not need to be disturbed in any way by addressing the standard of interested party when there is no contract award you are challenging and there is no solicitation you are challenging. I'm sorry, just to follow up on Judge Stack's question, my understanding of his question is, if we were to rule in your favor based on your interpretation of 1491B1, Interested Party, would those employees in AFGE have standing to bring their action to the Plains Court? No. I was simply... I'm sorry. Why wouldn't they meet your understanding of what's required under Prom 3? They are alleging some kind of legal violation in connection with the procurement, aren't they? They are. So then why, under your view, would they still not have standing under Prom 3? Because in that case, the legal violation manifested itself in a contract award and they were not able, nor did they, submit a bid for that contract award. This case, we are not challenging anything that manifests itself in a contract award. What if the original majority opinion here seemed to rely on the fact that they had alleged Prom 2 and Prom 3? Well, what if they amended their complaint to just allege Prom 3? So are we dealing with appearances here? Are you saying they couldn't do it because of who they are and what potential rights they might have under Prom 2? Or is it their choice to say, okay, that's the new Federal Circuit rule now, so even though I might potentially have a Prom 2 challenge, I'm just going to go under Prom 3 because otherwise I can't use Prom 3. No, Judge Post, again, this gives me an opportunity to again try to clarify what I was saying earlier. By Prom 3 only, we mean a claim that does not challenge a contract award or solicitation where the alleged violation... Can't you have two different claims? Yes, of course you can. Of course you can, but the fact, it's not a question of how you plead. They're not an interested party with respect to an award or a solicitation, but only with respect to a Prom 3. In other words, the only thing they can do is interfere with contract administration, the internal contract administration of the contract and tell the government they're not administering the contract in a proper way. That's what you're saying? That is not what we're saying, Judge Dyke. What we're saying is that certain violations in connection with the paternal will manifest themselves in a contract award. If that is what happens, then regardless of how you plead your case... Your client has no standing there. If we were challenging the contract award, we would not. Okay, so the only thing you can do is challenge internal contract administration. Why, in heaven's name, would Congress create a situation in which subcontractors have the opportunity to challenge the contract administration, which is in large part discretionary. It seems to be very similar to the sort of thing that was involved in Heckler & Cheney. And they can come in and say, well, the government, you should supervise your prime contractor differently. You should do this, you should do that. I understand talent there, where the commercial liability contract can be enforced by a potential prime contractor that the government should hire. But here, you know, you're saying we want to come in and tell the government how to supervise the prime contractor. That seems to me very unlikely that Congress could have intended that. Well, Your Honor, I'm glad you asked that. Because this case is Palantir, and if you decide the case for the appellees, you open a gigantic hole... No, it's not Palantir. Palantir is the prime contractor that was... I understand the difference, Your Honor. ...that was saying the government should have hired. Here, you're saying we want the government to supervise the prime contractor so as to tell them that they had to hire different people as subcontractors. If I may, Your Honor, if I may, I understand the differences between Palantir and this case. This case creates a gaping way to evade Palantir. And it's in the national security interest of this country not to do that. And Congress said... No, you're not allowed to interrupt me. I can interrupt you. I understand, Your Honor. How is this like Palantir? I don't understand what you're saying. Here's why, Your Honor. In Palantir, there was a solicitation that excluded Palantir prevention from bidding. They can challenge that. They got it reversed. And it proves, it stands for the principle that despite their good faith, sometimes the government gets it wrong. And the whole reason Congress enacted the commercial item preference is for that reason. Because we have a vibrant private sector Silicon Valley technology sector creating technology that this country needs. And that's what my client has done here. The only difference is that instead of making that decision to say, we don't care about Silicon Valley and all that tech stuff, we're going to hire a bunch of beltway bandits and design it from scratch. Instead of doing that right up front and giving us a nice easy target, they said, ooh, tiptoe over here, we'll do it in the subcontract. We'll let the beltway bandit make the decision on its own down the road. Congress was smarter than to let that happen. In subsections B2 and C5 of the 3453 statute, they said obligations to look at commercial items extend after the contract award. They said in C5, the agency shall ensure to the maximum extent possible... Counsel, can I ask you a question? What does that have to do with the meeting of the Interactive Party in 1491B1? That's the question today. And what you're talking about, we shouldn't be looking at the underlying statute. Should we determine what an Interactive Party is? Instead, we should just be looking at the language of 1491B1, right? That is correct, Your Honor. Okay, but what about this? The definition that was adopted in AFGE for the meaning of Interactive Party. It has an express limitation in it, doesn't it? Exactly. The whole definition of Interactive Party that's borrowed from SICA by its own terms is with respect to a contract award or solicitation. By its terms, it does not apply to a claim that is not challenging the contract award or solicitation. Do you think that supports your position before that there's something different about prong three only cases? Absolutely. If somebody can't try it with V, prongs one and two by making their challenge look like it's a prong three challenge? Yes, you can't evade it because the violation is manifested in an award or solicitation. That's what you're challenging. If I file a complaint and this court rules the way I guess you're advocating and even though I clearly have a prong one and a prong two, I'm eligible. I am precluded from saying I'd rather plead it as a prong three because I've got a few. Am I precluded from doing that? You could. You're not precluded, but to be an interested party, if what you're challenging is a violation manifested in the solicitation for award, you're going to need to meet the definition this court has established. If I allege that it's a violation. Not whether you plead it. It's the nature of the violation. You've said, counsel, repeatedly now it's regardless of how you plead it. That gives me some concern about what the motions practice looks like in the court of federal claims. You're saying the court would not be limited to how the plaintiffs in these cases actually plead their claims? If that's not right, what does that practice look like? The point I'm trying to make, Your Honor, is that the critical inquiry for an interested party is the nature of the violation being challenged. If you're challenging the contract award of solicitation, then the definition from AFG still works fine because it is by definition saying you need to be a prospective or actual veteran on that contract. Maybe I'm misunderstanding you. I think you're suggesting if I plead my case that I'm not challenging the solicitation or the award. I just plead prompt three, that nonetheless the court is supposed to look beyond that and see, is that really what you're alleging or are you alleging something else? I think that's correct and I think that's what this court has done. Is that motion practice just based on the complaint or are we going to have to get into discovery at a motion to dismiss stage? I think that can be assessed based on the complaint. There may be a rare circumstance where the administrative record helps flush it out, but in general I think it's clear from the complaint what that process is. Is there really a statement of request for relief in the complaint that would make it clear that they were asking for the contract to be not awarded to the awardee? Precisely, Judge Stoll. They're either trying to set aside a contract award or they're not. They're either trying to set aside a solicitation or they're not. The relief tells you all you need to know. Is there anything in the statute, what language in the statute leads you to believe that they're precluded from doing that if they seek that relief that they seek it under Problem 3? What's the statutory hook for that division? The statutory hook is that the CFC is given jurisdiction to render a decision on objection of any alleged violation of our regulation in connection with this affirmative. It stands alone as its own violation that can be brought, its own claim that can be brought. By definition, it can be brought even when the violation is not a solicitation or not a contract award, but is independent from either. If you thought it was an independent grant, why would Congress have put it in the very same sentence as challenges to solicitations and awards? We're talking about it in terms of Problem 1, 2, and 3 for convenience, but they didn't even mark it as it. This is one challenge. This is two challenges. This is three challenges. They have the word interested party, and they say, here are the decisions that interested party can challenge. The thrust of your argument, I thought I just heard you say it again, was that if you're challenging awards and solicitations, the SECA definition is okay, but if you're challenging statutory regulations, it has to be broader, and that's not the way we do statutory interpretation. If interested party is used one time in the sentence, shouldn't it mean the same thing for all of the sentences? Yes, and it does. It is the functional equivalent, Your Honor. That's what we said in our brief. No, it's not. The AFGE definition limits it to prospective authors. That has always been the case in the Court of Federal Claims under pre-award bid process. Jurisdiction is forever. I'm not even going to concede that, but you certainly can. I haven't seen any cases you've cited from the Court of Federal Claims that have subcontracted jurisdiction in pre-award cases. If the SECA definition, which is for award offerors, is okay, then why doesn't that apply to the last part of section 291B? Because it's a null set by its own terms. That's just not true. We've held that that last part of the sentence brings in claims that you couldn't bring under the award or procurement part. The GAO override decisions, for instance, those aren't challenging the award or solicitation, but they are being, you can challenge them under the latter part of the sentence. So the latter part does not challenge the award even for awardees or just failed awardees. I'm not sure I'm familiar exactly with what you just referred to, Judge Keith, but my point is this. The third prong the panel held without dissent, Judge Rubin held, and this court said it would not revisit, that the claims here challenged a violation in connection with the procurement separate from any solicitation or contract award. You must have a definition capturing the functional equivalent of the existing definition of interest of party. You must have one that applies to a challenge that is not to a contract award or solicitation, or else you have a null set. Let me just tell you, the case I cited to you is a case. And even if you might read it differently, let's just assume that I'm telling you the truth about the facts of that case, which is a GAO override, when GAO, you're a procurement lawyer, right? You understand this? GAO can issue a decision. The agency, if it doesn't like that decision, can, if it issues a decision at the right level, override that decision. That's not a decision connected to a solicitation or an award. It was found under the last part of the sentence, nonetheless, to be within the court's jurisdictions under 1491B. So it does do work and it isn't a null set, even if it's confined to failed awardees. Well, if it's confined to the people who bid on the contract and who were not selected as awardees, then by definition, that challenge in that case, which very much sounds like a challenge, to an award and then a reversal of a GAO decision on the award. So maybe the winning awardee says, well, you reversed it. I want a challenge. That is still a challenge around an award. It is not a challenge that it's... That's not what we base our decision on. Well, fair enough, Your Honor. And again, I'm not saying that the third prong is that just invoking it necessarily raises the question raised in this case. The point is, there are going to be some third prong challenges that are not challenging a contract, award, or solicitation. Okay, well, as with respect to that, the language seems pretty broad. Now, this case deals with 3453, but do you have any notion, if you're about, as to the scope or breadth, how many statutes and regulations exist in connection with the procurement or proposed procurement? I mean, the government complains about distributed solutions extending the life of the claims. Do you have any idea of the scope of this provision? We have looked. Appellees obviously have an incentive to try to show that there would be all sorts of things. We have found very, very, basically none. We found one very unique one about... No, I'm not talking about cases. I'm talking about statutes and regulations in connection with the procurement. What's the scope of that universe? I think it's small. We have not found a lot of statutes that deal with 3453 does, which is to impose... What are the ones you did find? I found one from... We found one from Alec, a case called Alatech, that involved a statute that required, believe it or not, condoms that were purchased by the USAID to be manufactured in the United States. How about the Buy America Act? Buy America is similar to that, but I don't know that it has, other than in that case, we haven't found a provision that applies after a contract award to downstream purchases. How about the Trade Assistance Adjustment Act? The Trade Act? The Trade Assistance Adjustment Act? Your Honor, I don't know that it imposes a clear obligation on the agency on the agency to continue to ensure that the prime contractor does things after the award, which is what 3453, C-5, and B-2 do. Those are the key provisions. 3453, C-5, and B-2... Did you challenge the conduct of the prime contractor here? No, Your Honor. We're challenging the conduct of the NGA, the agency. I understand that's what you are challenging, but did you ever consider challenging the conduct of the prime contractor here as well? I don't think the CFC has jurisdiction if you're challenging the conduct of the private party. I think the private party's conduct is relevant... I'm sorry, did you ever get any relief from the prime contractor if you only went through the NGA route? That's the way I'm asking. That is correct. We did not file a separate lawsuit against CACI. CACI intervened as a defendant. CACI's conduct is relevant to informing whether the NGA complied with its obligations. We think they blatantly did not. They violated the law. They violated Section 3453. Your Honor, I do see I've gone well into my rebuttal time, which I would like to preserve. That's fine, Mr. Hamm. Thank you very much. Now we'll hear from the government. Good morning. May it please the Court. The question before the en banc court today is not new. This court already confronted and resolved what interested party means in 1481b1 and AFGE, and for nearly a quarter of a century since then, government agencies and industry contractors have ordered their affairs based on    the SECA definition AFGE adopted. An unbroken line of this court's precedent has applied that definition to protests of all stripes without reservation. Percipient has offered no special justification necessary to uproot these settled expectations. To the contrary, AFGE's statutory analysis remains correct, and if anything, congressional action and inaction in the wake of that decision only further reinforce that Congress deliberately transplanted the interested party term of arts from SECA, and that the express definition Congress provided there should apply to spread protests before the Court of Federal Claims as well. Can I ask you, like, this is a really interesting point. I mean, if that was Congress's intent, why didn't they just include the definition of interested party as they did with SECA and with Brooks Act? Well, that's, so, I think because they thought it was unnecessary, but by transplanting... Is that common? For Congress to, you know, import interpretation, import a definition from another statute without expressly, you know, saying so, there's just going to be an assumption that it's the same definition? So, I don't know how often it happens, but it certainly, at least in George, the Supreme Court recently adopted this same method of interpretation, that when Congress takes a term of art, a known term of art, and transplants it, it brings that old form with it. Right, but here's a question for you, which is in this case, when SECA defines interested party, it very specifically says in the definition itself, with respect to a contract or a solicitation or other request for offers, comma, and then it gives the definition of interested party. It is not a definition of interested party for all circumstances, but just expressly with respect to a contract or solicitation or other request for offers. So, how can we assume that that was intended to be incorporated into the statute at issue here, 1491b1, which is not limited to those circumstances? Well, I have a couple answers to that, Your Honor. I think, first of all, that the cross-reference, so if we look at the definition in 1984 and the definition in SECA, it does refer to when it says the term interested party with respect to a contract or proposed contract described in paragraph one, and then it provides the rest of the definition. That sort of antecedent is necessary to make the end of that sentence make sense, in terms of what your direct economic interest has to be connected to, so it draws a line. You're talking about what the challenge is. Well, so it draws a line between the procurement being challenged and that you have a direct economic interest in that procurement. Yes, but, well, I'm not sure if I'm following you. What is the part of the sentence that you're saying needs to have understanding for that definition? You're saying, could you repeat that? I'm sorry. Sure. So, I believe the, I think recipient notes in its brief that when Congress defines interested party in CICA, it sort of leads into the definition that AFG quotes in its decision with the clause with respect to a contract or proposed contract described in paragraph one, and recipient tries to use that language to suggest that it's therefore only limited to challenges of a contract, a solicitation, a proposed award, an award. I think more logically that certainly that is the context in CICA, but that clause is necessary to connect the end of that sentence where it says that the direct economic interest would be affected by the award of the contract or by failure to award of the contract. The question becomes, which contract are we talking about for that direct economic interest? It's the one being challenged in paragraph one. Doesn't the statute have two different definitions of interested party in it? So, one of them is with respect to a solicitation or other request for offers, and the other one is with respect to another commercial process that's referred to in the statute. Do you know what I'm talking about? Because CICA has two different definitions of interested party in it. So, it adds another definition. So, the specific definition that AFG adopted is that definition. I do remember. The facts in AFG did not involve a promptory only case, right? It was not promptory only, but it was primarily promptory. Do you know of any cases that were promptory only cases where interested party had been limited to a contractor or a bidder? Absolutely. Distributed solutions is one such case. In distributed solutions, there was no solicitation. There was, therefore, no award or proposed award. It could not have been anything other than a promptory challenge, and the court, nevertheless, applied to the same interested party standing definition and, in fact, noted that the reason why there was standing in that case for protesters is that there was no question that they were not mere disappointed subcontractors without standing. But they did know they had standing, right? Our court held that they were standing in that case. Because they were prospective offerors on the... If the protest succeeded, and therefore, the government was required to proceed with a procurement and issue a solicitation, they intended to bid on that procurement that they were trying to sort of get the government to do by virtue of the protest. That would have been a type 1 case, prompt 1 case, right? No, because no solicitation had... There was no challenge to a solicitation. But the protest itself was a pure promptory protest. There was no objection to a solicitation or a proposed award or an award, because none of those things existed. Another example of what promptory does, for example, is cancellation cases. Congress amended FICA to specifically identify cancellation of solicitation as one... For GAO, they are actually separate prompts. Congress sets them out as separate subsections, and it added two subsections to address cancellations of solicitations and cancellations of awards if connected to a problem with the contract formation. At the Court of Federal... There's no dispute, I don't think, from recipients that a GAO, the same definition of interested party applies to those protests as well. At GAO, those would have to be pure promptory protests, and the Court recognizes those as having jurisdiction under promptory for those cases. The other thing that promptory is doing, we heard again from recipients today that if the FICA definition applies as it has been for the past many years, that that would somehow render promptory a null set or superfluous. And that's just not true. In addition to the cases that we've already discussed, that promptory covers, the other major thing that promptory does is it clarifies that the Court of Federal has alleged violations of statute and regulation. And that was a shift from how the Court considered bid protests in the pre-AGRA world, where it considered them as under the implied in fact contract basis, where it therefore held that the U.S. doesn't owe bidders necessarily a contractual obligation to comply with the law, and there were certain challenges to... I guess this is part of the Court's problem right now is that we cannot trace the true source of where this provision prong three from 1491 B.1 comes from. We know where the first two prongs come from, but at least through the parts of the legislative history I've looked at, or the section 800 panel report, you just don't get any inkling where this language from prong three comes from. And it invites a potential theory that maybe, just maybe, the point of prong three was to sweep in anything that could have been regarded as scandal jurisdiction in the district courts into 1491 B.1 through this language in prong three. If you could comment on that. So, two things. I think we do see evidence in the legislative history and in the section 800 panel report about where that language comes from. And specifically, it comes from this concern that there were certain violations of statutes and regulations that the Court of Federal Claims didn't hear as a result of the implied impact basis. I don't know what exactly you're pointing to when you say that. I mean, when I looked through what I looked through, it seemed to be the whole goal was to consolidate all the pre-award and post-award bid protest jurisdictions under a single group. One forum, and at least initially it would be concurrently because of the District Court of Federal Claims report. I didn't see anything else really beyond that. Sure, and it was absolutely to consolidate and harmonize the four forums and to sort of reduce the I think it was called jurisdictional chaos that was occurring. But I would direct the Court to addendum page 56, which is a portion of the section 800 panel report that sets out the specific recommendations that they made for amending section 1491-B1. Can I just double check on that? The defense 1993 report did not propose anything across time. So everything it said was simply preserving the version, essentially moving in from CICA exactly what is now Bronze I and II. The proposed legislation does not include a Bronze III. It somehow appeared in late September of 1996 on the floor of the Senate. So it includes the same language, but Congress moved it up into the Senate. Well, not quite. A really, really big difference. The grant of jurisdiction does not include it then starts as the first sentence of the next paragraph, which is about how you review. It's essentially a standard of review. There is no Bronze III grant of jurisdiction in the defense 1993 report. That's right. Congress moved that language. That's the gap that maybe Judge Chen was referring to. We don't know whence it came. I think it is a reasonable inference that it came from at least one of the things that it came from was the concern to make it explicit that the Court of Federal Claims, like the GAO and the GSBCA, is authorized to find improper any agency action which violates a procurement law or regulation. I'm sorry. That's not a jurisdictional grant. Here's what you can do in review of what in the proposal from defense 1993 was limited to Bronze I and II. Sure. And as a result, because it moved into the jurisdictional grant, the other thing that Bronze III does... Didn't you naturally infer that that was an expanding the kinds of agency actions that are subject to the new provision. One of two specifies particular agency actions. Bronze III does not itemize agency actions. It's focused on a source of illegality and then this broad class of agency actions, anything that is in connection with procurement. There, therefore, would naturally be overlap between three, on the one hand, and one and two. And three needs to be accommodated to that by not overriding the specific SECA-based limit on one and two. That doesn't imply that for a challenge to an agency action different from the solicitation proposed award in Bronze I and II that the same limitation applies. Well, I think there's two different questions. There's the question of what is the scope of the jurisdictional grant? So what kind of cases can be brought? And then there's the question of who can bring them? I agree with Your Honor that by virtue of putting that prong-free language and moving it into the jurisdictional grant, it does expand the universe of cases that can be heard and, therefore, the Court of Federal Claims has jurisdiction... To agency actions that are not challenges to solicitations proposed awards or awards. Exactly. Like cancellation challenges, like the challenge in distributed solutions, and like other types of challenges around the process of contract formation. But I don't think it's a reasonable inference when Congress took the same interested party term, and it doesn't tell us that that sort of expansion of what kind of cases can be brought does not necessarily imply that Congress meant to expand who can bring them. But back to what Judge Solis was asking about. The actual definition in SICA that was borrowed doesn't just have a lead-in to the definition. Here's what we're about to talk about. It says that the definition is only with respect to, and I will just summarize it as, prong-2, prong-1, and 2 agency actions. That's part of the definition. Part of it. It's not just some sort of, let me tell you what I'm talking about when I use interested parties. Well, except that it's the same definition, for example, that applies at GAO to cancellation protests. Now it is, but that was added later. In 1994. It happened before ADRA. So by the time Congress was enacting ADRA, that was already part of what was covered in the SICA definition of interested party. And that's a prong-3 protest. With respect to cancellation of a contract. Of a solicitation. GAO is 2. There's a cancellation of the solicitation or cancellation of the contract if it's based on an error in contract formation. At the time that ADRA was enacted, the SICA definition, even at GAO, already covered what would be a prong-3 protest at the Court of Federal Claims. More importantly, I think if Congress intended that term to be broader than it was at GAO. Why doesn't one assume that the term has its ordinary meaning, which is clearly broader than actually bitter. Get actually bitter or putatively would be bitter only by transplanting from the old soil. Not from anything resembling an ordinary meaning. Why doesn't the soil that is borrowed, even if limited to what is covered by SICA itself, which is not this kind of thing. Although it does include certain things that would fall under prong-3. I think even under that theory, it's not covering just prong-1 and prong-2 protests at the Court of Federal Claims. When Congress used that term and it used a known term of art in the exact same context, I think the better inference is that Congress intended to apply that definition that it took the time to expressly provide. How do you know you're dealing with a known term of art? Who decides that? I mean, I think in this context, again, because these are parallel statutes, ADRA and SICA, 1491b-1, and the protests at GAO and GSBCA is the only time that Congress has ever affirmatively set out to define protest jurisdiction. It used the same term for standing there. When we look to the legislative history, we know that that wasn't an accident. The specific recommendation was that they used the same term and for the same definition to apply. Is it always the case that when you import a term of art into a statute that you bring with it although the history of that particular term? That is the old soil principle that when you use a term of art and it had a known meaning, in this case it was an expressly defined meaning, that when Congress transplants it into a new statute in the exact same context, the same definition would apply. And I'll note that in addition, the... You said something important. You just said it uses it in the exact same context. But it's not the exact same context, is it? It's different language for prong three versus whatever is in SICA, right? I mean, you have to admit that. It uses different language. I agree. 1491 B1 is essentially a patchwork quote rearrangement of terms that are found in SICA. And you think it's the same because some of the things that are listed in SICA might fall under prong three. So you admit they're different, right? There's different language. It is not the identical language, but it is the identical context. I don't know how I'm supposed to know that. Because both are about the ability to bring a good protest. It's different places. It could be different. It could, but the legislative history tells us that the entire goal and purpose of ADRA was to not have them be different, to harmonize and consolidate. So that the district court cases ended up with the Court of Federal Claims, right? Well, that was one of them. It was to eliminate the judicial confusion, but it was also to align to as much as possible with the USGCA. And that is an express recommendation in the section 800 panel report. If there's no jurisdiction here for first offense to bring this case to the claims court, could they bring it in the district court under an APA action? I think they probably have other problems. Well, at least make the claim that they had a direct economic interest that was injured here by a failure by the agency to comply with section 3453. I mean, I think they could try. I don't know, frankly, whether... What's the government's position on that? Do they have standing under the APA to bring an action in the district court? Or in other words, did the subcontractor in Validada have a standing under the APA to keep that action in district court? What's the government's view of that? So I think in Validada there's sort of the bigger issue that the district court seemed to sort of gloss over was that it seemed to not be a government action that they were challenging, that it was taken by the prime contractor in that context. Just try to meet me where the question is. Sure. Subcontractors would be subcontractors. They see a problem. They believe the government has violated some provision they're obligated to follow that is directly on their economic interests in the course of some government contract situation. Can they bring an action under the APA in district court or not? I think they probably can't. Why not? Because generally speaking, contract administration is preempted by the CDA, and subcontractors don't have standing under the CDA. Did they pre-aggra under so-called Stanwell jurisdiction? It seems like there were at least a handful of Stanwell-type cases in district court in which it was a subcontractor that was bringing the action. I think actually the recipient doesn't cite any where a subcontractor was actually found to have standing, but the Validada district court did cite a couple of cases where it was, and they were all sort of in unique circumstances. First of all, where the prime contractor was sort of the agent of the government. Right, so there were two like that, where it was specific finding that the prime contractor was the agent of the government or the government specifically directed the terms of the solicitation that the prime contractor issued and directed the evaluation. Also notably, they were actual bidders or offerors on a solicitation in all of those cases. The problem for a recipient here is that they just sat out this competition entirely. Could they have stayed in this competition? My understanding is that they could not have performed all of the portions of the contract. Sure, and that's why we have teaming arrangements. They could have formed a team, either as a prime contractor with somebody else or as a subcontractor on somebody else's or as a joint venture. What is the test under the APA? What would be the test to go to district court? For standing, if the person adversely affected or has a violation within the meaning of a relevant statute. I'll note on that It's a zone of interest test, right? Correct. I'll note on that the reason why the APA looks at what is the underlying violation in order to determine standing is because Section 702 directs that inquiry. The provision has what we keep calling these three different sections. The first is someone who, an interested party, could object to a solicitation. The second is the interested party could object to a proposed award. Do you agree that there are different groups of people that would qualify under each of those? Isn't it the case that more people could object to the solicitation than could necessarily have jurisdiction to object to the award? Correct, and particularly because of blue and gold waiver. So the interested party differs depending on whether you're looking at prong one, the group of people who qualify as an interested party differs depending on whether you're challenging the solicitation, which is prong one, or whether you're challenging the award, which is prong two. So the application of the same definition Answer my question. The group of people who qualify as an interested party changes depending on whether you're looking at prong one, a solicitation, versus prong two, an award. Yes or no? As a practical matter, yes. That's only because you've given a definition that necessarily sweeps both ends. Why wouldn't that suffice then to say since the words interested party have different meaning as applied to who can bring a challenge to a solicitation, and totally different meaning depending on who can bring a challenge to an award, why couldn't it have a slightly different meaning, i.e., sweep in a different subset of people for the third prong? Well, there'd be no basis in anything Congress has ever said to do that. And I think that's the statute. Well, except that Congress used the term of art that it defined elsewhere to as a particular definition that I think covers the universe of people that they intended to bring any of these challenges. I mean, I think ultimately it sort of comes down to basic fairness, right? If you don't show up to class, you can't challenge the fact that you failed the test. And if you don't show up to the competition, then you can't file a bid protest. Where does that say that in 1491b1? In the term interested party. Frankly, I think that's the only... You want to borrow that definition from CICA, even though it's limited expressly by its own terms. It says this definition is only for those circumstances in prong one and prong two. I mean, yes, I think that definition is borrowed over. But in order for interested parent, I think I can object to what my kids are taught in class. Can I? But you know what? I didn't show up to that class, but can I object to what my kids were taught in class? Well, but only if your kids actually showed up to class. Okay, fair enough. This is a very hard case, obviously, because we're sitting here on a block. We have an outer statute that doesn't specifically redefine interested party. And the only thing I read in the legislative history really is talking about consolidation in one court from two courts. So how do we determine whether they meant something different from the old court of federal claims bid process jurisdiction, which has been around for decades and allowed the same kind of offers to challenge both the terms of solicitation and reward, or they meant something broader like an APA definition? What evidence do we look to? Well, I think the best evidence is that they did not cite the APA. They specifically referenced the APA for the standard of review and invoked section 706 there, and did not invoke section 702 in either, you know, interested party comma as defined in section 702 or used any of the language that appears in 702. Is it just that interested party meaning something that has been long part of the criminal law prior to ASRA? I think that's right. And the fact that we have an express definition from Congress for that very term, they used that same term, and we have evidence in the legislative history that the recommendation was that it be that term as defined in SECA. I'm going to take a little issue with your response to my hypothetical. I could have kept my kid out of class, and I could still object to what he or she is going to be taught, couldn't I? Fair enough, Your Honor, but you're not allowed to protest a competition that you did not participate in. Could I ask you a question about the consequences of what the plaintiffs are seeking here, because we talked a little bit with plaintiffs counsel about that, and it seems as though there are a lot of statutes where subcontractors might come in and seek enforcement under their view of problems. Could you comment on that? Absolutely. The scope of this holding would be profound and not narrow, and I'll note at the outset that when we talk about government contracts, a significant number of terms that appear in government contracts and therefore... Why would the scope be profound? If you have to be a SECA definition type person for prong one with regard to proposals, you have to be someone who maybe would have filed a solicitation, a proposal solicitation, you have to be a SECA person for prong two, i.e. someone who might have been able to obtain the award. What makes three so broad? Three is just capturing other things, not otherwise delineated. The specific governs over the general. You've got prong one, you've got prong two. Three is just not that. Why is three broad? Three seems to me infinitesimally small, actually. Sure. I guess what I would say is if the recipient's position in this case is adopted, then it becomes very sweeping in scope. How so? I don't understand. It doesn't override what's required for prong one or prong two, and that's the bulk of the cases. What are the cases you think are going to get swept into three by virtue of their definition? Well, if they're allowed to protest in this case, i.e. someone who sat out the competition and just showed up after the contract was awarded and began performance, and they can challenge, the reason that they're claiming they're able to challenge is because there is a statute or regulation that governs the conduct of that contract post-performance. The conduct of the government with respect to the contract, not the conduct of the contractor. Well, I think... There's an obligation in the statute on the government to sit on the contractor, to get the contractor to do certain things with each purchase. Sure, and those are the clauses in government contract terms, right? The terms of the contract are things that the government is supposed to require the contractor to do. In government contracts, those clauses are imposed by statute or regulation. I know, but the only statutes I see are 3453C5 and B2. What else would be implicated by prong three? You haven't articulated anything else that could be challenged under prong three. You didn't make a sky falling argument. I don't get it. Sure. So, for example, in addition to sort of the obvious parallels to commercial item preferences like the small business preference and the various other socioeconomic preferences... Those go into solicitations. Those go into awards. What else is there for three? Well, so does this clause. So, for example, another clause that exists in the contract between CACI and NGA is an affirmative obligation by the contractor to take affirmative steps to hire, employ, and advance in employment veterans or persons with disabilities. There's a statute that requires for procurements over a certain size for the government to include that provision and obligate its contractor and subcontractors to affirmatively support the hiring of veterans. And you think that's a bad thing? No. So you think people shouldn't be able to do that. But under presidium theory, if a veteran applies for a job at CACI and doesn't get hired, suddenly they seem to have a protest against the government about NGA insufficiently enforcing that obligation on its contractor to promote veterans and to hire veterans. And now we're not just getting involved in contract administration. We're getting involved in employment disputes. And I think there was a question, Judge Cunningham, you asked at the end of your session. Presidium didn't try to sue CACI here. Their problem was that CACI they're mad about how CACI evaluated them and didn't find their product sufficiently appealing to buy as a subcontractor. That might not be surprising given the underlying concern of the statute NMIA, which is government and contractor. I'm trying to think of a more derogatory term. Really quite liking the idea of spending a gazillion dollars on a film to develop something it could buy at Home Depot. With all due respect, Your Honor, I think that's a sort of it's a real cut off your nose, just bite your face conspiracy theory. I don't know. And frankly it is contrary to the law of this circuit that we presume that government behaves in good faith and they comply with their obligations in good faith. You were talking about the contractor. Sure, but NGA there's certainly a clause in this contract that requires CACI to the maximum extent practicable to use commercial solutions and NGA has every incentive to enforce that clause against its contractor. I think enforcing a statute specifically providing as alleged for the government to take certain actions with respect to the contractor is any different from enforcement nearly of a provision in the contract which ordinarily you would have to meet a pretty tough third party standing third party beneficiary standing requirement for. I guess the question of consequences here it seems to me is meaningfully limited to the question of what other statutory obligations there are on the government that by assumption were intended to protect not the contractor but the somebody who might want to sell to the contractor. I think you've identified two or three. Well, first of all I would say that even if it's limited just to the statute even if we assume that this commercial preference is a sui generis statute and this extended definition of standing only applies to this one statute that already opens up protests to an unbounded universe of plaintiffs. If you are a commercial company that has a commercial product or a commercial service that you believe should be a component part of any government contract at any stage of performance you can now show up and file a protest. Counselor, what about the complaint here? I mean you're going well beyond the facts of issue in this case. The complaint here, as I would call it, correct me if I'm wrong, but I understand that at the time solicitation was reaching out trying to make sure that its product was going to be evaluated and throughout while the contract was being formed it was making sure the government knew of its product and there's a lot in the complaint that would make it so this is not just anybody coming in a year after the contract is formed and saying hey you should have bought my pencils it's a lot more there's a lot more to it than that. So that's actually incorrect. They did not reach out to MGA until after the contract was awarded and performance began. They did not for example respond to any of the RFIs or the market research that MGA conducted. They didn't come to instance for days. They did not engage with the solicitation in their first reach out to MGA. I mean you've used all your time all her time and then some of his time so I think if Ms. Perry wants any time at all we're going to have to give it to her now. Thank you. And we'll balance the time out for Mr. Hume's rebuttal please. My name is Ann Perry and I represent CACI. Even assuming that this court were to narrow the definition of standing just for 10 U.S.A. 3453 to allow potential subcontractors to file a protest challenging the government's administration of a contract that opens up an unbounded amount of protests and the reason I say that is because virtually all procurements even those for sophisticated military equipment have the ability to have commercial item components and if a subcontractor at any point during that process can go in and protest a decision not to give the contract to that subcontractor then that will stop performance it could cause duplicative costs because the government would have to stop the contract if one is doing and might have to replace whatever component is being used. Here it was not actually new technology it was government owned technology that was selected. That would actually just cause more harm to the procurement system than had actually ever been envisioned. In fact the whole bid protest process was designed to be efficient and effective at resolving concerns as early in the process as possible. Here if percipient believes that it had a product that met all of the requirements for the CV system it should have protested the solicitation and argued that those should not have been combined in a single procurement but should have been broken out as a commercial item that was then provided as GFE to the contractors. They didn't do that. And what standing would it have had to protest the solicitation It would have had standing to argue that the solicitation was unduly restrictive of competition by bundling requirements. It could have gone to GAO or the court. Yes because they would argue that they were trying to get a direct contract with the government. So in your view, if we were to adopt Percipient's position does that mean we necessarily have to overrule our decision in AFGE Yes, I believe that's true. I think that's right. I'm completely baffled by something. You want the definition for interest of the party to be the same for all three, right? All three provisions. One, two, and three? Correct. You just said that they would have jurisdiction under one to bring a challenge to solicitation. So what's your problem with giving jurisdiction under three? If it's exactly the same group of people you lost me completely. Okay, so under prong one, you're against the solicitation terms, right? So anyone who publishes timing, they should have brought the protest earlier, they would have had standing. So you think they have standing under one? Under one had they brought it against the solicitation to argue, not that they should actually, they would have had standing to argue that you should consider an interested party under one. Is that because they're a prospective offeror? Correct. Thank you, Mr. Perry. Mr. Hume, we'll give you your nine minutes and we'll be more lenient than that because they exceeded their time by way more than that. So if you want to stand here longer, I'll let you. Thank you, Chief Judge Moore. I'm not sure that will be necessary, but thank you. Your Honors, when the appellees say that the same test from SIPC and AFGE should apply to this case, what they mean is that the recipient had to be an actual prospective bidder on the SAFIRE contract to bring this challenge. The recipient does not challenge the award of the SAFIRE contract. So that is an inapposite test. This court and the Court of Federal Claims have both recognized repeatedly the need to Chief Judge Moore's point for a flexible application of the test that depends upon the nature of the violation being left. We cite cases on page 40 of our opening brief and in footnote 8 that Judge Brubing cited showing that it is not a wooden application of the requirement. You have to look at the texture and the facts of each particular case. Is there a from one claim that you could have brought away as Perry suggests there is? I don't believe so, Judge Toronto. There is nothing that required, there's no law that required the government to split apart. If it wants to do a massive IBIQ contract, including all of the structured background that's called the FDR, as well as other things in integration, as well as computer vision. There's no law that that violated, at least not that I'm aware of. And there's certainly nothing that required us to go and force them to split that apart. To the contrary. Never mind the required. The question is whether you could have invoking the same substantive statute that maybe you're invoking here though maybe different provisions of it. The statute had not been violated yet is what I'm trying to say. It would not have been a viable protest. So there's nothing in the substantive statute that you're invoking that would have to win made unlawful the decision by the government to form the solicitation the way it did combined. That's correct. That's exactly correct. And moreover, there are provisions in the statute, I'll come back to again, sections 3453, C5, and B2, which specifically apply after the award of the contract to a prime and say the government after that award must make sure the prime does the commercial item market research to see if they can meet the needs and they must procure that to the maximum extent. Congress felt so strongly about this statute and directed the government to do mandatory actions. Why didn't they provide an enforcement action in the statute? Your Honor, they used capacious language in 3453 for the requirements. There were subsequently capacious language used in AGRA for the types of claims that can be brought. Was there any reference in the legislative history of either to suggest that these were supposed to be enforceable in the Court of Federal Claims? This Court has obviously already held that if the government violates the provisions of the commercial item preference, that is actionable in the Court of Federal Claims. In connection with what we've previously limited the definition to, which is prospective offerors or people within the zone of interest, not subcontractors. That's right, Your Honor. That's why we're here. It is a different context. I assume your answer to my question is there's nothing specifically in the legislative history of either the commercial item statute or AGRA that suggested that the commercial item statute should be enforceable by subcontractors in the Court of Federal Claims. I don't think there's anything either way that I'm aware of in either legislative history about a private enforceable right needing to be conferred or being conferred. Let me just finish my answer. What about sovereign immunity? Shouldn't that counsel us to read the waiver of sovereign immunity narrowly and suggest that your interpretation is just a little bit too broad? No, Your Honor. I think Judge Moss's analysis of that is spot on, and it goes to a question that was asked and that we just didn't get the answer on. If there, prior to AGRA, this case would have been brought as an APA case under the Scanlon jurisdiction. After AGRA, everything was supposed to be sent to the CFC. As Judge Moss said, it's not a question of whether there's a waiver. It's a question of where the case can be brought. So for that reason, we don't. And the other reason is the one Judge Brubank relies on in his decision, which is that canon of construction only applies when the statute is ambiguous. We think it is unambiguous in the third prong. One concern I have for your side is that AFGE was decided 24 years ago. Let's assume that the court concludes that AFGE did a definitive statutory interpretation of interested parties in a comprehensive way and didn't do just some piecemeal interpretation of a portion of the 1499B law. Then isn't it incumbent upon you to somehow establish that that decision was clearly wrong? I mean, obviously, we're sitting here in bank. We can overturn precedent if we want, but starting to cite this, I think, still means something here. And I think then, therefore, the burden is on you to show not only is there perhaps a better way of thinking about commentary, but that AFGE was, in fact, clearly wrong in its interpretation of an interested party. Yes, Judge Chen, we addressed that in our reply brief and in our opening brief that we do think if the court reaches the conclusion of the premise of your question that it should overturn AGE and clarify the standard. The point is, if it's a close question, maybe the text, the history, everything is a bit muddled. Then it becomes a tougher case for you to convince us to set aside and start and overturn AFGE. Well, I think part of the answer, Judge Chen, first of all, I think the standard from the Bosch case is good and substantial regardless of how the standard is articulated for overturning a panel decision of a non-bancor. The reality is we're talking, actually, about very fine haze of gray here, which is the point I was trying to make. I mean, in AFGE itself, the appellants were trying to argue away from the APA standard and for the Interested Party standard because they had lost under the APA standard. These standards are intertwined and very similar and it really comes down to how they're applied. As I was saying earlier, the texture of each case dictates whether the person has a direct interest, not derivative of anyone else, and would be able to... Have you learned anything in the past 24 years that would suggest AFGE was wrongly decided, either through a set of terrible consequences over the past generation or some other addition that might make it so we really do need to revisit the correctness of AFGE? I think the incredible breadth of flexibility in which it's been applied shows that it needs to be broadened to make sure it captures the full texture of cases and doesn't unwittingly eliminate an entire body of cases. The panel held in this case in section 1B of its opinion that the facts we allege, allege a legal violation in connection with the procurement. There was no dissent from that. This panel said it would not revisit that. That holding will make no sense in a case like this if we are not an interested party. There is no party more interested than us in that violation. Can I ask another... This is sort of following up another. On the assumption that we disagree with you about 1491B1, should we transfer the case to district court? In that assumption you should, but it would be completely inconsistent with the whole purpose of AGRA that all these cases... The government there could make a CDA preclusion. The CDA argument is not... Never mind the merits of it. That would be the forum to do it. Yes, I suppose so. I think that would be at war with the whole purpose of AGRA, but yes. And it would be consistent with the Validado decision. Just to come back, Judge Turner, to finish my answer to your question. Not only was there nothing that was clearly violated in the solicitation, or any law that prevented them from structuring an omnibus IDIQ solicitation, but there were things in the statute we could rely on that says this statute applies after the award. And there were things NGA told us that we could rely on. They're going to do a commercial evaluation. We're going to evaluate Mirage. That's what we allege in our complaint, and that's throughout our complaint, including if you look at Appendix 32, Paragraph 82 of our complaint, there was contact before the award with NGA from recipient where we were told Mirage would be considered. So... Where we were told Mirage... One more follow-up. Is there... APA, you can only get prospective relief, right? Is there prospective relief that's viable at this stage? Yes, it would be injunctive and declaratory relief, but they need... 100%. They need to perform, they need to ensure that the commercial item research is properly done, a full, proper evaluation of Mirage, to the point of the flexibility of this standard, to be honest. When you step right back from it, are we a prospective bidder? Of course we are a prospective bidder. That's not part of the test. That is a problem. We are a prospective bidder for the procurement that should take place. The problem, again, when they say we have to satisfy the original test, they mean a prospective bidder on the SAFIRE contract, because they didn't challenge that and therefore they're out of luck. But we're not challenging the SAFIRE award. We're challenging the violation of the laws that apply after that award to do market research into the availability of commercial items like ours that are essential to national security. The best computer vision company in the country, procured by SOCOM. SOCOM can acquire anyone they want. I know I'm delving into the merits, but just to emphasize what's at stake here. We're not challenging the SAFIRE contract. We are a prospective bidder for the procurement that should happen if they did the market research they are legally required to do and legally failed to do, violating the law. My sense is that what is bothering some members of the panel is that that may manifest itself by them being a subcontractor. And that is giving everyone considerable, not everyone, but some people's considerable alarm. My plea to you is to put that in context. There are two ways in which subcontractors cannot come to court to complain. If they're complaining about a decision by the prime, a private decision, they cannot do that. If they are only indirectly, derivatively harmed, because their prime that they teamed up with lost, they cannot come to court. But there is nothing that has ever said, and this court should not say, that when a putative subcontractor is itself the most directly harmed person, they're not downstream of anyone else who suffered harm. They're the most directly harmed person. By a violation of law, then they should be able to come to court, even though they're a putative subcontractor. And in fact, that was the law before ADRA. I implore the court to read pages 84 and 85 of Judge Moss' decision in Valedada. He cites the cases showing that. And yes, Judge Dyke, some of the cases say, oh well, you either needed to be an agent, or the government needed to be intimately involved with the decision. Here, the law required the government to be intimately involved. Under your definition, all providers of commercial services are potential bidders, right? I don't know about all. All providers of commercial services are potential bidders. It depends on the contract. It depends on the  You have to show you have to win on the merits that you're a potential bidder. You have to show, just like in any case, that you have a substantial chance of winning if they follow the law. You have a substantial chance of being able to meet the procurement needs of your product. Whether or not you actually submitted or prepared a bid to be part of that analysis? Yes, if the bid was something you could bid on with your product. But if they take your commercial item and put it into a massive IDIT, of course you're not going to bid. Because you can't win. You can't bid. They're not allowed to evade the commercial item requirement by putting the commercial product needs, the needs for that commercial product, in a massive contract so that you can't bid on it and you can't challenge it and then delegate it to the prize. ...was considering bidding and decided not to. I'm not sure. I don't believe that's correct, Your Honor. I don't know where you got that. There's been a lot of extra record statements made by the appellees. That is not correct. They could not bid. Okay, counsel. I thank both counsel for their argument. And I think this case is concluded.